THE STATE, EX REL. THE BOARD OF HEALTH OF THE STATE
OF NEW JERSEY, respondent,

*v.*

GEORGE IHNKEN, appellant.

[Submitted April 8th, 1907. Decided June 17th, 1907.]

1. So much of the act entitled "An act to secure the purity of the public supplies of potable waters in this state" (*P. L. 1899 p. 73*), as is repugnant to the provisions of the act entitled "An act to prevent the pollution of the waters of this state by the esablishment of a state sewerage commission" (*P. L. 1899 p. 536*), is repealed by the latter act.

2. The power conferred upon the state board of health by the former of these statutes to invoke the aid of the court of chancery to restrain the discharge of waste water, from the washing of bottles and cans in a creamery and from the cleansing of its floors, into the tributary of a stream from which a municipality obtains its water-supply, is not revoked by the latter statute.

On appeal from a decree advised by Vice-Chancellor Stevenson.

*Mr. William C. Cudlipp,* for the appellant.

*Mr. Edward D. Duffield* and *Mr. Robert H. McCarter,* attorney-general, for the respondent.

The opinion of the court was delivered by

GUMMERE, CHIEF-JUSTICE.

The bill in this case was filed in the name of the state, on the relation of the state board of health, for an injunction to restrain the appellant, who was the defendant below, from permitting the waste water from the washing of cans and bottles, and the cleansing of the floors in his creamery near Stockholm in this state, to flow into and pollute a tributary of the Pequannock

55

river from which the city of Newark obtains its supply of water for domestic use. The bill was filed pursuant to authority conferred upon the state board by the provisions of "An act to secure the purity of the public supplies of potable waters in this state," approved March 17th, 1899. *P. L. 1899 p. 73.* The first section of that act provides that

"no sewage, drainage, domestic or factory refuse, excremental or other polluting matters of any kind whatsoever, which, either by itself or in connection with other matter, will corrupt or impair, or tend to corrupt and impair, the quality of the.water of any river, brook, stream, or any tributary or.branch thereof, or of any lake, pond, well, spring, or other reservoir, from which is taken, or may be taken, any public supply of water for domestic use in any city, town, borough, township or other municipality of this state, or which will render, or tend to render, such water injurious to health, shall be placed in or discharged into the waters, or placed or deposited upon the ice, of any such river, brook, stream, or any tributary or branch thereof, or of any lake, pond, well, spring, or other reservoir, above the point from which any city, town, borough, township, or other municipality, shall or may obtain its supply of water for domestic use; nor shall any such sewage, drainage, domestic or factory refuse, excremental or other polluting matter, be placed, or suffered to remain, upon the banks of any such river, brook, stream, or of any tributary or branch thereof, or of any lake, pond, well, spring, or other reservoir, above the point from which any city, town, borough, township, or other municipality, shall or may obtain its supply of water for domestic use as aforesaid."

No person or corporation is exempted from the provision of this statute except municipalities, which, at the date of the passage of the act, had a public sewer system legally constructed under municipal authority, discharging its drainage or sewage into any such river, brook, stream, &c.

Upon the hearing in the court of chancery it was considered that the proofs made it clear that the defendant was engaged in polluting the waters of a tributary of the Pequannock river, about ten miles above the Newark intake, and that he was doing so within the prohibition of the act of the legislature just mentioned, as construed by the court of chancery, and subsequently by this court, in the case of *State Board of Health* v. *Diamond Mills Paper Co., 63 N. J. Eq. (18 Dick.) 111; S. C. on appeal, 64 N. J. Eq. (19 Dick.) 793.*

We concur with the learned vice-chancellor in his conclusion upon the facts, and in the view expressed by him that the acts of the defendant which are complained of are within the prohibition of the statute referred to.

It is argued before us, however, that the act of March 17th, 1899, was repealed, by implication, by a subsequent statute passed in the same year, and entitled

"An act to prevent the pollution of the waters of this state by the establishment of a state sewerage commission, and authorizing the creation of sewerage districts and district sewerage boards, and prescribing, defining and regulating the powers and duties of such commission and such boards" (*P. L. 1899 p. 536*),

and that for this reason the decree appealed from should be reversed, notwithstanding the fact that it is supported by the decision in the *Diamond Mills Paper Company Case.*

In considering this question it is to be borne in mind that an inferential repeal of a statute is a pure question of intention, and that every reasonable intendment will be made against such result; that such destroying effect will be deemed to reside in the more recent statute only when it is absolutely irreconcilable with the prior one. *Ruckman* v. *Ransom, 35 N. J. Law (6 Vr.) 565; Hotel Registry Corporation* v. *Stafford, 70 N. J. Law (41 Vr.) 528.* And this is peculiarly true with reference to statutes enacted at the same session of the legislature. If it is possible to do so they should receive a construction which will give effect to each. Each is supposed to speak the mind of the same legislature, and the words used in each should be qualified and restricted, if necessary, in their construction, so as to give validity and effect to every other act passed at the same session. The presumption is that different acts passed at the same session of the legislature are imbued by the same spirit, and actuated by the same policy, and that one was not intended to repeal or destroy the other. *1 Lew. South. Stat. Con.* § *268.*

The state sewerage commission statute of 1899 was revised and amended by the legislature of 1900. *P. L. 1900 p. 113.* The amendments, however, made little change in the original statute,

except by increasing the powers of the commission. The question, therefore, to be determined is whether the provisions of the later act of 1899, as amended in the year 1900, are so manifestly inconsistent with, and repugnant to, the provisions of the earlier act, as to disclose a clear intent on the part of the legislature to repeal it. The State Sewerage Commission act, after prescribing for the composition of the commission and the term of office of its members, imposes upon them the duty of investigating the various methods of sewage disposal, in order that it may be able to make proper recommendations in regard thereto; the investigating of all complaints of the pollution of the waters of the state which shall be brought to its notice, and if they shall find that any of the waters of the state are being polluted to the injury of any of its inhabitants, either in their health, comfort or property, to notify in writing any person, corporation or municipality found to be polluting such waters. It then provides that, prior to a time to be fixed by such commission, which time shall not be more than five years from the date of its notice, said person, corporation or municipality must cease to pollute said waters, and make such disposition of their sewage or other polluting matter as shall be approved by the state sewerage commission. It then confers upon any person, corporation or municipality, aggrieved by the finding of the commission, an appeal to the court of chancery, which court is empowered by the act to confirm the finding of the commission, or to reverse or modify it in whole or in part. The act then provides that it shall be unlawful for any person, corporation or municipality to build any sewer, drain or sewerage system from which it is designed that any sewage or other harmful and deleterious matter, solid or liquid, shall flow into any of the waters of this state, so as to pollute or render impure such waters, except under such conditions as shall be approved by the state sewerage commission, but declares that this provision shall not be deemed to prohibit the use or extension of existing sewers, drains or sewerage systems, unless the person, corporation or municipality controlling the same shall be served with a notice to cease pollution, as thereinbefore provided. It then provides

that it shall be unlawful for any person, corporation or municipality to build or cause to be built or operate any plant for the treatment of sewage, or other polluting substance, from which the effluent is to flow into any of the waters of this state, except under such conditions as shall be approved by the state sewerage commission, to whom plans shall be submitted before building; and further, that it shall be unlawful for any person, corporation or municipality, after the date specified in the notice before mentioned, to permit or allow any sewage or other polluting matter to flow into said waters from any sewer, drain or sewerage system, except under such conditions as shall be approved by the state sewerage commission. Authority is then conferred upon the commission to apply to the court of chancery for an injunction to prevent violations of the provisions of the act.

It seems quite clear, from a reading of the provisions of this act, that the powers conferred upon the state sewerage commission are much less extensive than those conferred upon the state board of health by the earlier statute. The sewerage commission is only to take proceedings where actual pollution of the waters of the state is shown to exist, whereas the state board of health is authorized to invoke the aid of the court of chancery whenever the polluting matter, either by itself *or in connection with other matter,* corrupts or impairs, *or tends to corrupt or impair,* the stream from which any municipality obtains its water-supply. The state sewerage commission, before applying to the court of chancery for its injunction, must first notify the offending party to stop the pollution of the water, and must fix the time within which the pollution shall cease, whereas the state board of health may sue out an injunction to restrain the forbidden acts immediately upon ascertaining their existence. The state board of health may restrain the deposit of all kinds of polluting matter upon the ice of any stream, or upon the banks thereof, while the supervision of the state sewerage commission would seem to be limited to such pollution as comes from sewers, drains, sewerage systems or sewage-disposal works.

It is, of course, apparent, from an examination of the two statutes, that the powers conferred upon the state board of health

by the earlier act have been considerably modified and restricted by the later act. But this fact affords no ground for imputing to the legislature an intent to repeal the earlier act *in toto.* Bearing in mind the settled rule of construction in determining whether a statute has been repealed by implication, all that can be said in the present case is that such of the provisions of "An act to secure the purity of public supplies of potable waters in this state" as are repugnant to the provisions of the later statute are repealed, and that the remaining portions thereof are unaffected by the later act.

The conduct of the appellant which is made the ground of its action by the state board of health, namely, the permitting of waste water from the washing of cans and bottles in his creamery, and from the cleansing of its floors, to flow into a tributary of the Pequannock river, a stream from which the city of Newark obtains its water-supply, is an act not placed within the cognizance of the state sewerage commission by the statute which created that body. The power to invoke the aid of the court of chancery to restrain such action, therefore, still remains with the state board of health.

The decree appealed from should be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, FORT, HENDRICKSON, PITNEY, SWAYZE, REED, TRENCHARD, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL—14.

*For reversal*—None.